894 So.2d 1268 (2005)
STATE of Louisiana, Appellee,
v.
Larry THOMPSON, Sr., Appellant.
Nos. 39,454-KA, 39,455-KA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
*1272 Louisiana Appellate Project, by Karen Godail Arena, Paula Corley Marx, Lafayette, William R. Campbell, Jr., New Orleans, for Appellant.
Schuyler Marvin, District Attorney, Joe M. Lawrence, Assistant District Attorney, for Appellee.
Before PEATROSS, DREW & LOLLEY, JJ.
PEATROSS, J.
Larry Thompson, Sr. ("Defendant") was convicted of aggravated burglary and attempted first-degree murder. Defendant was sentenced, on separate occasions, to 30 years at hard labor for the aggravated burglary charge, and 50 years at hard labor for the attempted first-degree murder charge. The two sentences are to be served consecutively. Defendant now appeals, specifying four assignments of error. For the reasons set forth herein, Defendant's convictions and sentences are affirmed.

FACTS
On the morning of March 13, 2003, Defendant, his son Larry Thompson, Jr. ("Junior"), Tung Nguyen ("Nguyen"), Nicholas B. Gentry ("Nicholas"), Anthony R. Gentry ("Anthony"), and Regan[1] Gatti ("Gatti"), robbed an armored car in Shreveport of approximately $780,000. The robbers met at an apartment complex and loaded the stolen money and a large cache of guns and bullet-proof vests into a minivan and made their escape.
The gang was spotted getting into the green minivan, and a BOLO alert was issued for the vehicle. Mark Sharbono, of the Shreveport Police Department, spotted and began trailing a green van matching the alert, heading east on I-220, near the Shreveport-Blanchard Highway exit. As Officer Sharbono followed, the van sped up and slowed down in an obvious attempt to lose the officer. As they entered Bossier Parish, Officer Sharbono pulled over the van.
Inside the van, Gatti armed himself with an AK-47 semi-automatic rifle with a 60-round magazine and asked Defendant what to do. Defendant responded, "shoot the mother f* *ker." As Officer Sharbono turned on his lights, the back window of the van exploded with gunfire from a semi-automatic weapon. Several rounds hit Officer Sharbono's patrol car, including one that pierced the dash, ricocheted off the steering wheel and struck him in the arm. After being shot, the officer was unable to continue pursuit of the van.[2]
Officer Dwayne Cortez, who was in the patrol car behind Officer Sharbono, continued to pursue the assailants after they fired at Officer Sharbono, the chase continuing at speeds of over 90 miles per hour. The pursuit of the van continued through Bossier, on to Benton Road and ended in the Green Acres subdivision.
As law enforcement descended on the subdivision, the van pulled into the carport of a home on Wesley Circle, owned by John Stanley Palmer ("Mr. Palmer"). Mr. Palmer testified that he and his wife were in their kitchen when they heard a loud noise in the carport. Mr. Palmer stated that he opened the door to his house and saw a green minivan in his carport and *1273 men wearing ski masks getting out of it. Mr. Palmer quickly shut the door and dead bolted it. As the men began kicking at the door, Mr. Palmer testified that he called 911, armed himself with a .22 caliber pistol and began shooting at the door. The bullets did not penetrate the metal door; however, the firing did cause the intruders to retreat.[3] Junior was later found hiding in a tree nearby and was arrested. Nicholas was arrested in the Palmers' backyard. Nguyen was found hiding in a neighbor's bushes and was also apprehended. Anthony was arrested in a nearby backyard, and Gatti broke into a house across the street and was later arrested.[4] The police recovered the stolen money and several of the guns used in the robbery from the garage of the house next door to the Palmers' house.
Arthur Cyr lived on North Waverly Street, one block behind Wesley Circle. Mr. Cyr testified that he was sitting at his kitchen table, drinking coffee, when he saw Defendant walk from his back yard, down the driveway and towards the street. Mr. Cyr went to his front door and called to Defendant, asking him if he was looking for something. He stated that Defendant gave no reply and kept walking down the street and into another yard. Mr. Cyr then called the police and gave them the location and the description of Defendant.[5]
At about the same time, Officer William C. Lott, of the Bossier Parish Police Department, arrived at the scene to aid in the search of the suspects. Officer Lott noticed Defendant walking briskly down North Waverly Street. As Officer Lott passed by him, Defendant abruptly stopped and reached down as if he were pulling up weeds from a lawn. As Officer Lott continued, he noticed in his mirror that Defendant started walking again, but stopped a second time to pick up weeds in another yard, when the officer stopped his patrol car.
As Officer Lott backed his vehicle up, Defendant began walking towards him. Defendant then identified himself to the officer who ordered him to the ground and cuffed him immediately. Officer Lott placed Defendant in the custody of Officer Todd Hylbert, who read the suspect his Miranda rights and placed him in his patrol car. As he did, Officer Hylbert testified to hearing gunshots from a nearby yard.
Officer Hylbert took cover beside his car; and, as he did so, he heard a cell phone ringing in Defendant's pocket. He retrieved the phone and saw on the caller ID that a "Reagan" (Gatti) was calling. Officer Hylbert initially ignored the phone, until he heard a dispatch that one of the suspects had been shot and called 911, trying to surrender, but was disconnected. Officer Hylbert hit redial, and when the call was answered, he asked who was speaking. Gatti identified himself and asked if "Larry" (Defendant) was alive. Officer Hylbert told him that Defendant was secure and in his patrol car. Officer Hylbert was then able to negotiate Gatti's surrender to the police.
About 20 minutes later, Officer Hylbert received a radio call that the police were attempting to determine how many of the robbers had been captured. He asked *1274 Defendant to help so nobody else would get hurt. Officer Hylbert testified that Defendant responded that "there were maybe six or seven" other members and that the robbery had not gone as planned.
Officer Hylbert took Defendant to the police station where he was questioned by Detective Tom Oster, with the Violent Crimes Unit of the Shreveport Police Department.[6] Detective Oster summarized a portion of Defendant's statement as follows:
My son, Neal, wouldn't be here today if I didn't ask him to be ... He's not a bad person like I am. [The police] got all the facts. You know what happened out there. There's no reason for me to bury myself and make a statement to you.
The police found weapons, bullet resistant vests, ski masks and the bags of money stolen in the robbery near the van on Wesley Circle. No fingerprints were recovered from the weapons. DNA testing was conducted on the ski masks and the results on one mask could not rule out the presence of DNA from Defendant.[7]
Defendant and the other co-perpetrators were originally charged in one indictment for the charges of aggravated flight from an officer, in violation of La. R.S. 14:108.1(C), and aggravated burglary, in violation of La. R.S. 14:60. The other co-defendants were also charged with various other crimes in this same indictment. All of the defendants initially pled not guilty.
Defendant's trial was set to begin on March 8, 2004.[8] On February 6, 2004, the State filed a Bill of Information under a second docket number (124,940) charging Defendant with attempted first-degree murder of Officer Sharbono, under La. R.S. 14:27 and La. R.S. 14:30(A)(2), and conspiracy to commit attempted first-degree murder of Officer Sharbono, under La. R.S. 14:26-27 and La. R.S. 14:30(A)(2). At a hearing on February 27, 2004, the trial court granted the State's motion to consolidate the two cases for trial. Defendant objected, arguing that the late filing of new charges, just prior to trial, provided inadequate time to prepare for trial. The trial court denied Defendant's objection.
Defendant's jury trial began on March 8, 2004. A portion of the voir dire is at issue in this appeal. During initial questioning, prospective juror Geraldine Myers-Greer expressed some confusion in how to apply *1275 the legal burden of proof. The trial court provided Ms. Myers-Greer several hypothetical examples to clarify the legal issues and allowed the State and Defendant the opportunity to question her at length.
Afterwards, Defendant challenged Ms. Myers-Greer for cause, arguing that her answers indicated that she was unable to understand and apply the required legal burden of proof. The trial court found that, although she had some initial confusion, subsequent questioning established that she understood how to apply the legal burden of proof appropriately. Defendant then exercised a peremptory challenge on Ms. Myers-Greer. The record indicates that Defendant used all of his peremptory challenges.
During the proceedings, Defendant moved for a mistrial as to the charge of aggravated flight from an officer and conspiracy to commit first-degree murder based on defects in the language in the Indictment and Bill of Information. The trial court granted Defendant's motion, finding that the State improperly pled the offenses in those two counts.[9] Nguyen testified on behalf of the State. He testified regarding the preparation and execution of the armed robbery, as well as the failed escape attempt. Nguyen indicated that Defendant was the mastermind behind the robbery. He also testified that, as they were escaping, Defendant ordered Gatti to shoot at the police car trailing them. Nguyen admitted that he did not tell the police about Defendant's statement and did not mention it in his testimony against Defendant in the federal trial of charges stemming from the armed robbery.
The jury found Defendant guilty of attempted first-degree murder and aggravated burglary. Defendant filed a Motion For New Trial and a Motion for Post Verdict Judgment of Acquittal, both of which were denied. Defendant was sentenced to 30 years for the aggravated burglary conviction and 50 years for the attempted first-degree murder conviction, both at hard labor and to run consecutively. The sentencing transcript shows that, after sentencing, the trial court advised Defendant, "you can apply  after two years  after the finality of this sentence, you can apply for appellate relief." Defendant filed a Motion to Reconsider Sentence, which was denied. This appeal followed.

DISCUSSION

The State failed to prove, beyond a reasonable doubt, that Mr. Thompson was a principal to aggravated burglary of an inhabited dwelling and of attempted first-degree murder.
Defendant argues that the evidence failed to show that he was a principal in either attempted first-degree murder or aggravated burglary. The State argues, by way of contrast, that the evidence of such acts was legally sufficient. We will address each crime in turn.
La. R.S. 14:27 defines "attempts" and provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Similarly, La. R.S. 14:24 defines "principal" as follows:

*1276 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
La. C. Cr. P. art. 821 provides:
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992) The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. Hearold, supra; State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Defendant filed a Motion for Post-Verdict Judgment of Acquittal, asserting that the evidence was insufficient to convict him of the crimes of aggravated burglary and attempted first-degree murder. La. C. Cr. P. art. 821 provides that a Motion for Post-Verdict Judgment of Acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992).
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in *1277 La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In his post-verdict motions, and before this court, Defendant argues that the evidence did not establish that he was even a principal to the shooting of Officer Sharbono or the aggravated burglary of the home of Mr. Palmer. The Louisiana Supreme Court, in State v. Schwander, 345 So.2d 1173 (La.1977), stated:
A person may be convicted of an offense even if he has not personally fired the fatal shot. The law of principals states that all persons involved in the commission of a crime, whether present or absent, are equally culpable. See La. Rev Stat. 14:24. However, the Defendant's mere presence at the scene is not enough to "concern" an individual in the crime.
A principal may be connected only to those crimes for which he has the requisite mental state. State v. Holmes, 388 So.2d 722 (La.1980); State v. McAllister, 366 So.2d 1340 (La.1978). State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).

Attempted First-degree Murder
Defendant was convicted of attempted first-degree murder. La. R.S. 14:30 defines "murder" and provides, in pertinent part:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, drive-by shooting, first degree robbery, simple robbery, or terrorism.
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties, or when the specific intent to kill or to inflict great bodily harm is directly related to the victim's status as a fireman, peace officer, or civilian employee.
The gravamen of attempted murder, whether first- or second-degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741 (La.1982); State v. Martin, 92-811 (La.App. 5th Cir.5/31/94), 638 So.2d 411. Specific intent is that state of mind that exists when the circumstances indicate *1278 the offender actively desired the proscribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. Huizar, supra; see also State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson, supra; Huizar, supra.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020; State v. Johnson, 27,522 (La.App.2d Cir.12/6/95), 665 So.2d 1237.
In the case sub judice, the record reflects that Defendant did not fire the shots at Officer Sharbono; but, rather Gatti shot at him with a semi-automatic AK-47 rifle during the pursuit of the suspects. The officer's patrol car was hit several times and he was hit once in the arm. Given these facts, the State proved beyond a reasonable doubt that Gatti had the specific intent to kill and committed an overt act for the purpose of accomplishing that goal. The fact that the perpetrators did not actually kill the officer does not vitiate a finding of specific intent to kill.
Defendant next argues that the evidence is insufficient to show that he was a principal to Gatti shooting at the police officer because there is no evidence that Defendant ever fired a weapon. The testimony of co-defendant Nguyen was riddled with inconsistencies such that it could not support proof that Defendant ordered Gatti to shoot the officer. This court need not address this issue to determine if the evidence shows Defendant was a principal to the attempted first-degree murder because the evidence shows that he was an active principal in the armed robbery of an armored car.
After the robbery, Defendant was involved in the transfer of the stolen money and a large cache of weapons and armored vests into a second getaway vehicle. Defendant was a principal in the shooting of the police officer by his active involvement in the robbery and getaway. The jury could have inferred that Defendant, by loading the weapons in the getaway vehicle, knew that they would be used to effectuate his escape. Whether Defendant actually fired the bullet that struck the officer is of no consequence as he was clearly aware of, and involved in, the commission of this crime. Accordingly, we reject this assignment of error as it relates to the attempted first-degree murder conviction.

Aggravated Burglary
Defendant argues that his conviction for aggravated burglary should be overturned because the evidence does not establish that he committed, or attempted to commit, any felony "therein" the Palmer residence. No specification of a felony that Defendant committed "therein" was made during trial or in brief by the State. Similarly, the jury instructions did not define any specific felonies that Defendant was alleged to have committed.[10]
La. R.S. 14:62, states, in pertinent part:

*1279 Burglary is defined as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable ... with the intent to commit a felony or any theft therein ... (Emphasis ours.)
Further, La. R.S. 14:60, states that a conviction of aggravated burglary requires proof of:
... an unauthorized entry of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender, is armed with a dangerous weapon.
The record shows that Defendant was part of an armed gang that drove a van into the Palmers' carport. A "structure" has long been defined to include a carport regardless if it is attached to the house or is an independent structure. State v. Baggett, 292 So.2d 201 (La.1974); State v. Freeman, 539 So.2d 739 (La.App. 3d Cir.1989), writ denied, 543 So.2d 17 (La.1989).
Mr. Palmer testified that the masked men attempted to force their way into his home, but were stopped by his shooting at the door. Afterwards, the homeowner discovered the door of his car had also been opened. From this evidence, a jury could reasonably infer that Defendant, as part of an armed group fleeing the police, entered the carport without authorization to steal the owner's car or break into his house in order to facilitate further escape. Accordingly, we reject this assignment of error.

The trial court erred in denying Mr. Thompson's challenge for cause as to juror, Ms. Myers-Greer.
Defendant argues that, although Ms. Myers-Greer was led to give the correct answers, the voir dire shows that she did not fully understand how to apply the law to the facts. The State argues, by way of contrast, that the trial court did not abuse its discretion in denying Defendant's challenge of Ms. Myers-Greer for cause.
La. C. Cr. P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(4) The juror will not accept the law as given to him by the court; or
When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant, in order to obtain a reversal of his conviction, must show erroneous denial of the challenge for cause and use of all peremptory challenges prior to completion of the jury panel. La. C. Cr. P. art. 800; State v. Ross, 623 So.2d 643 (La.1993). A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683; State v. George, 26,867 (La.App.2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855.
A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially *1280 according to the law and evidence. State v. Ellis, 28,282 (La.App.2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521, citing State v. Eastin, 419 So.2d 933 (La.1982); State v. Heard, 408 So.2d 1247 (La.1982); State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993).
The trial court initially questioned Ms. Myers-Greer and she replied that she could judge fairly on the facts given at trial. When asked if she could presume Defendant to be innocent unless the State proved its case beyond a reasonable doubt, Ms. Myers-Greer responded that she was not sure but that she would be as honest as possible. She explained to the court that, although Defendant was "assumed innocent," the fact that he was at the crime scene caused her to doubt whether she could apply the presumption of innocence fairly. The trial court then carefully explained to Ms. Myers-Greer that mere presence alone would not satisfy the State's burden of proof.[11]
When the State questioned Ms. Myers-Greer, she stated she would be able to follow the law, as long as it was explained to her, because she did "not know the law at all." She further stated she understood the law of principals after being provided a definition by the State and that she would require the State to prove its case beyond a reasonable doubt.
When Defendant's counsel questioned Ms. Myers-Greer, she was given the elements of aggravated burglary, then asked if she could return a verdict of not guilty if the State did not prove every element of the crime. Ms. Myers-Greer replied that she could. She further stated that she would be able to set aside any emotions she had about protecting police officers and would make the State prove all elements of attempted murder of a police officer.
When asked if she had formed an opinion on guilt, Ms. Myers-Greer replied, "we're all human," and stated that she wondered what would possess a person to do that, and "how did they think they were going to get away with doing that."
When asked if she had already made up her mind, Ms. Myers-Greer replied that, just as the judge had asked, she would listen to both sides and hear the evidence before she would decide. "I can't say, yes, he's guilty. I don't know that he held that gun. Maybe you've got something to tell me to prove to me, make me feel a little bit better about it." She repeatedly stated that she understood that Defendant was presumed innocent.
Defendant's counsel again questioned Ms. Myers-Greer about her understanding of the legal principles and asked if, "for some bizarre reason" she had to vote that moment, would she vote innocent? She answered yes, she would give Defendant the presumption of innocence. Ms. Myers-Greer stated that she believed the police could mistakenly arrest the wrong man and agreed that the State could "over charge" a defendant in a bill of information. She stated she understood that an indictment or bill of information was only an accusation and was not evidence. She understood that if the State did not prove every element of a crime, she would have to vote not guilty. Ms. Myers-Greer stated that in Defendant's part of the case, if he chose not to testify, she would not hold that against him.
After questioning, Defendant's attorney challenged Ms. Myers-Greer for cause, arguing *1281 that, although she "was prompted to say the right answers or thought ... the right answers to say," he believed she may not require the State to prove all elements of a crime. Counsel further argued that he believed "... this subconscious thing in her head that we're starting at guilty with her and trying to convince her the other way ..." The trial court denied the challenge, finding that, although she had some initial confusion, when some hypothetical situations were provided, it seemed that she understood. We agree.
Defendant has failed to establish that the trial court abused its discretion in finding that Ms. Myers-Greer was a suitable juror. The record reflects, at length, that Ms. Myers-Greer showed some initial confusion regarding how to apply the law, but that her misunderstanding was more than ameliorated by the trial judge. It is noteworthy that it was in response to Defendant's extensive questioning that Ms. Myers-Greer demonstrated her understanding of, and the willingness to apply, the correct law to the evidence in this case. For these reasons, we reject this assignment of error.

Trial counsel was ineffective in failing to file a Motion to Suppress the evidence and the statements because both were obtained as a result of an unlawful detention.
Defendant next argues that his attorney was ineffective for failing to seek suppression of evidence based on his being stopped and arrested without any evidence that he had committed a crime.[12] The State argues, by way of contrast, that the detention was lawful and Defendant failed to show that his attorney was ineffective.
La. C. Cr. P. art. 703(A) provides:
A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle to raise such a claim. Id.
When the record is sufficient, however, this court may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673; State v. Smith, 25,841 (La.App.2d Cir.2/23/94), 632 So.2d 887. In the case sub judice, the record is sufficient to resolve Defendant's claim of ineffective assistance of counsel.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, Defendant must satisfy a two-prong test, as discussed in Strickland, *1282 supra. First, Defendant must show that his attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id.
The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; See also State v. Roland, 36,786 (La.App.2d Cir.6/5/03), 850 So.2d 738, writ denied, 03-2395 (La.2/13/04), 867 So.2d 685; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. Roland, supra; Moore, supra.
Second, Defendant must show that his counsel's deficient performance prejudiced his defense, which requires a showing that the errors were so serious that they deprive him of a fair trial  a trial whose result is reliable. Strickland, supra. Defendant must prove actual prejudice before relief will be granted. Roland, supra. It is insufficient for Defendant to show the error had some conceivable effect on the outcome of the proceedings. Id. Rather, he must show that, but for the attorney's errors, there is a reasonable probability the outcome of the trial would have been different. Roland, supra; Strickland, supra; see also State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established in our jurisprudence. La. C. Cr. P. art. 215.1 states, in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Fauria, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978).
The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.1993), writ denied, 626 So.2d 1177 (La.1993); State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991); State v. Thibodeaux, 531 So.2d 284 (La.App. 3d Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Rodriguez, 396 So.2d 1312 (La.1981); Washington, supra; Thibodeaux, supra. To assess the validity of an investigatory stop, the critical inquiry focuses on the officer's knowledge at the time of the stop. State v. Williams, 421 So.2d 874 (La.1982); State v. Wesley, 28,012 (La.App.2d Cir.4/3/96), 671 So.2d 1257, writ denied, 96-1127 (La.10/4/96), 679 So.2d 1379.
*1283 In the case sub judice, Defendant has failed to satisfy either prong of the aforementioned Strickland test. Defendant failed to establish that his trial counsel's performance was deficient by not filing a Motion to Suppress because of the manner in which he was initially detained. The record indicates that Officer Lott was looking for members of a group that had just been involved in an armed robbery, a high-speed police chase, an officer shooting and who  moments earlier  had gone into a residential neighborhood attempting escape. A neighborhood homeowner spotted Defendant and called 911 to report his description and location. In response, Officer Lott drove through the area looking for suspects and saw Defendant walking briskly down the street and engaging in obscure behavior. Given Defendant's unusual behavior and proximity, the officer had reasonable cause to believe that Defendant had been, or was about to be, engaged in criminal activity.
In addition, the record indicates that Defendant approached Officer Lott and identified himself  effectively turning himself in to the police. Shortly thereafter, a cell phone in Defendant's pocket began ringing, the caller ID indicating that Gatti was calling. Only after hearing on his radio that a suspect called 911, did Officer Hylbert hit redial, which eventually led him to negotiating Gatti's surrender.
Defendant argues that his attorney should have sought to suppress the evidence regarding Officer Hylbert's phone conversation with Gatti because the phone was taken, and the call made, without his consent. When a warrantless search is conducted, the state has the burden of showing the search was justified as an exception to the warrant requirement of the Fourth Amendment. The plain view doctrine renders a warrantless search and seizure of evidence reasonable (1) if the officer has an overriding prior justification to be in the otherwise protected area from which he observes the evidence, (2) he discovers the evidence from this position inadvertently, and (3) it is apparent to him that the evidence observed is contraband. State v. Ray, 471 So.2d 831 (La.App. 2d Cir.1985), writ denied, 475 So.2d 364 (La.1985). The first element was satisfied in the case sub judice when the officer detained Defendant in order to protect and aid the citizenry.
Our analysis of this assignment of error ends with whether or not the "immediately apparent" requirement has been satisfied. In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Supreme Court held that this element requires only probable cause to believe an item is evidence or contraband. State v. Camp, 459 So.2d 53 (La.App. 2d Cir.1984), writ denied, 462 So.2d 212 (La.1985). Probable cause, in circumstances where property is in plain view, is defined as a practical and non-technical probability that incriminating evidence is involved, determined by the totality of the circumstances confronting the officer. State v. Hill, 618 So.2d 568 (La.App. 2d Cir.1993), citing State v. Evans, 441 So.2d 82 (La.App. 2d Cir.1983).
It was only after the sound of gunfire was heard in the area and a dispatch message relayed that one of the gang members called 911 to surrender, but had been disconnected, that Officer Lott hit redial to confirm who had called. Considering the totality of the circumstances confronting the officer at that moment, it was reasonable to believe that the phone ringing in Defendant's pocket was pertinent to the ongoing criminal activity. Thus, per Hill, supra, the "immediately apparent" requirement has been satisfied.
Assuming, arguendo, that Defendant's trial counsel had filed a Motion to Suppress and it had been successful, we, nonetheless, *1284 conclude that he failed to show how the outcome of the trial would have been different. The State produced a great deal of other evidence to show that Defendant was the mastermind in the armed robbery and was highly involved in the events that followed.
Accordingly, we find that Defendant has not effectively carried his burden of proof to show that his attorney was deficient in not seeking to suppress the aforementioned evidence and statements, nor has he shown that, had such a motion been filed, it would have changed the outcome of the trial. This assignment of error is without merit.

Defendant's sentences are excessive.
Defendant next argues that his sentences are excessive. The State argues, by way of contrast, that the trial court did not abuse its discretion, given Defendant's record and the severity of the crimes.
La. R.S. 14:27(D) provides, in pertinent part:
D. Whoever attempts to commit any crime shall be punished as follows:
(1)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.
(b) If the offense so attempted is punishable by death or life imprisonment and is attempted against an individual who is a peace officer engaged in the performance of his lawful duty, he shall be imprisoned at hard labor for not less than twenty nor more than fifty years without benefit of parole, probation, or suspension of sentence.
* * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
Similarly, La. R.S. 14:30(C) provides:
C. Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the determination of the jury.
La. R.S. 14:60, provides, in pertinent part:
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has broad discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, 99-1753 and 99-1528 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.5/12/04), 873 So.2d 939.
As a general rule, maximum sentences are appropriate in cases involving *1285 the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
After conviction, the trial court ordered a presentence investigation report of Defendant which revealed an extensive criminal history and that he was a fourth-felony offender. The trial court sentenced Defendant to the maximum sentence of 50 years at hard labor on the attempted first-degree murder conviction and the maximum sentence of 30 years on the aggravated burglary conviction.
In sentencing Defendant to the maximum sentences allowed, the trial court found that these were the most serious violations of the offenses; and, given his lengthy criminal past, Defendant was the worst type of offender. The crimes were committed in a manner that endangered the lives of several people and with total disregard for public safety. The trial judge stated that it was clear that Defendant had not benefitted from his previous incarcerations and that, this time, he would be sent away to serve the interest of public safety. Given the language of Grissom, supra, and Guzman, supra, and Defendant's history, we find that the trial court did not abuse its wide discretion in imposing the maximum sentences; and that the sentences do not shock the sense of justice. Accordingly, we reject this assignment of error.

Error Patent
The review of the record for errors patent revealed a failure to adequately advise Defendant of the two-year time limitation imposed on applications for post-conviction relief.
La. C. Cr. P. art. 930.8(A) states, in part:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 ...
At sentencing, the judge stated, "you can apply  after two years  after the finality of this sentence, you can apply for appellate relief." This statement was misleading and did not clearly notify Defendant that an application for post-conviction relief would not be considered if filed more than two years after the judgment of conviction and sentence had become final.
The trial court is required to inform the defendant of that time limitation; however, the advisement is supplicatory language which does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189. The failure to advise is not grounds to vacate the sentence and remand for re-sentencing. State v. Cooper, 31,118 (La.App.2d Cir.9/23/98), 718 So.2d 1063, writ denied, 99-0187 (La.5/14/99), 741 So.2d 663.
The trial court should have advised Defendant, and it is suggested that this court may now advise him by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant, Larry Thompson, Sr., are affirmed.
AFFIRMED.
NOTES
[1] In the record, Gatti's first name is also spelled "Reagan." The correct spelling is "Regan."
[2] It appears the shooting from the van stopped because a round either exploded or tore apart in the chamber of the AK-47 rifle being used to shoot at the officers, jamming it and rendering it useless.
[3] At trial, Mr. Palmer testified that he could not, with certainty, identify Defendant as one of the masked men in his carport.
[4] The jury was not provided specific information as to Gatti breaking into the other house to avoid references to other crimes evidence.
[5] The record indicates that Mr. Cyr was unaware of the robbery or the events occurring on Wesley Circle at that time.
[6] Detective Oster advised Defendant of his Miranda rights and then had him sign a Miranda rights form.
[7] Although the results were not conclusive enough to establish that Defendant was the donor, the DNA lab calculated that the sample was 16 billion times more likely to be a mixture of the DNA from Defendant and Gentry than two unknown Caucasian males.
[8] On October 31, 2003, Anthony also withdrew his prior not guilty plea and pled guilty to one count of simple burglary of an inhabited dwelling and one count of aggravated flight from an officer. On the same date, Nicholas withdrew his guilty plea and pled guilty to one count of aggravated burglary. In November 2003, a jury trial was conducted for Junior and Gatti. As the trial began, Junior entered a plea of guilty to aggravated flight from an officer. The jury found Junior guilty of the responsive verdict of unauthorized entry of an inhabited dwelling. Gatti was found guilty of one count each of aggravated flight from an officer, attempted aggravated burglary, aggravated burglary, attempted second-degree kidnapping and unauthorized entry of an inhabited dwelling, together with two counts of attempted second-degree murder.

On September 22, 2003, Nguyen withdrew his prior not guilty plea and pled guilty to one count of aggravated battery, on the condition that he would testify against the others. Shortly thereafter, Defendant moved to have his trials severed from those of his co-defendants because at least one of the co-defendants would be testifying against him. Defendant's motion was granted.
[9] The State applied for writ relief to this court, which was denied. See State v. Larry Thompson, Sr., 38,831-KW (La.App.2d Cir.3/16/04).
[10] Defendant does not assert any error as to jury instructions.
[11] To aid her, the trial judge gave Ms. Myers-Greer the hypothetical that he occasionally ate at the casino restaurant; however, his mere presence at the casino restaurant does not establish that he was gambling. Ms. Myers-Greer replied that she understood.
[12] Defendant did not timely file a Motion to Suppress the evidence; but, rather, this issue is presented on an ineffective assistance of counsel claim. Defendant argues that his convictions and sentences should be overturned because his attorney failed to move to suppress statements and evidence because he was unlawfully detained.