# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-559

STATE OF LOUISIANA

VERSUS

KENNETH JAY CLARK

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 47096
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Billy Howard Ezell, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

**Michael Harson**
**District Attorney, 15th Judicial District Court**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**Telephone: (337) 232-5170**
**COUNSEL FOR:**
 **Plaintiff/Appellee - State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 2806**
**Monroe, LA 71207-2806**
**Telephone: (318) 387-6124**
**COUNSEL FOR:**
 **Defendant/Appellant - Kenneth Jay Clark**

**Bart J. Bellaire**
**Assistant District Attorney, 15th Judicial Court**
**P. O. Box 175**
**Abbeville, LA 70511-0175**
**Telephone: (337) 898-4320**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**THIBODEAUX, Chief Judge.**

Following a two-day jury trial, the defendant, Kenneth Jay Clark, was convicted of attempted first degree murder of a peace officer, pursuant to La.R.S. 14:27 and La.R.S. 14:30. The trial court sentenced Mr. Clark to the maximum sentence of fifty years at hard labor without benefit of parole, probation, or suspension of sentence. His motion to reconsider his sentence was denied.

Mr. Clark filed this appeal, asserting that the evidence was insufficient to support the conviction and that the fifty-year sentence was excessive. For the reasons that follow, we affirm the conviction and the sentence of the trial court.

I.

## ISSUES

We shall consider whether the State's evidence was sufficient to support the conviction of attempted first degree murder against Mr. Clark and whether the maximum sentence of fifty years was excessive under the circumstances.

II.

## FACTS AND PROCEDURAL HISTORY

On March 31, 2007, Mitchell Schexnider, a field training officer with the Vermilion Parish Sheriff's Office, was on patrol with his trainee, Phillip Harris. At approximately 3:30 a.m., the officers responded to a dispatch regarding a vehicle crash on Prejean Road in Vermilion Parish. Their supervisor also responded, but quickly left the scene for another dispatch. When officers Schexnider and Harris arrived at the scene, they found a car straddling a large ditch, with the back tires hanging over the ditch, the mid-section bottomed out on the inner bank of the ditch, and the front tires in a large vacant cane field.

When the deputies got out of their vehicle, they saw the driver in the stranded car, rocking back and forth in the driver's seat. They each instructed him to exit the vehicle, but he did not comply. Deputy Schexnider repeated his instructions and approached the vehicle. Suddenly, the driver of the car emerged from the driver's seat with a twelve-gauge shotgun and shot Officer Schexnider in the chest from a distance of twelve to eighteen feet. Officer Harris returned fire, and both officers sought cover. The defendant ran into the field with the shotgun. Officer Schexnider was wearing a protective vest, but his shirt and vest were riddled with small holes, a large portion of his chest was sprayed with stippling from the shot blast, and one of the shotgun pellets lodged in his body and was still there at the time of trial.

State troopers and other parish police arrived to investigate and secure the area around the vehicle broken down at the edge of the vacant field. It began to rain heavily. At approximately 2:00 p.m. on the afternoon of the earlier 3:30 a.m. shooting, Kenneth Clark walked through the field into the search area with his hands raised. He was covered with mud, soaking wet, and his body temperature was down. He was cuffed and Mirandized and transported to Abbeville General Hospital. During transport, he twice asked the transport officer, Lieutenant Dale Hargrave, "I killed him, didn't I?" Subsequently, in the courthouse, just prior to his bond reduction hearing, Mr. Clark stated that he did not need a bond reduction hearing because he was guilty of shooting a police officer and he did not want to waste the taxpayers' money. This statement was made in the presence of inmates being held in the jury deliberation room and in the presence of Sergeant Bryan Kibodeaux, the relief officer responsible for the inmates.

On May 21, 2007, the State filed a bill of information charging the defendant, Kenneth Jay Clark, with attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30. It also charged him with possession of a firearm by

2

a convicted felon, a violation of La.R.S. 14:95.1. On April 30, 2009, pursuant to a motion to quash based upon double jeopardy, the State dismissed the latter charge.

III.

## LAW AND DISCUSSION

### *Standard of Review*

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

### *Sufficiency of the Evidence*

Attempted first degree murder includes "a specific intent to kill or to inflict great bodily harm upon a . . . peace officer . . . engaged in the performance of his lawful duties . . . ." La.R.S. 14:30(A)(2). In his first assignment of error, Mr. Clark argues that the State's evidence at trial did not support the verdict. Specifically, Mr. Clark argues that the State failed to prove his identity as the shooter. This is the same argument that Mr. Clark made at trial. The linchpin of this assignment is the officer's admission that he had not been able to identify the defendant from computer

3

photographs, even though he identified Mr. Clark as the shooter in court. When identity is at issue, the State must negate any reasonable probability of misidentification. *State v. Hughes*, 05-992 (La. 11/29/06), 943 So.2d 1047.

We observe that the State's case did not rely solely upon the police officer's in-court identification of Mr. Clark, as other facts indicated that Mr. Clark was the man who shot Deputy Schexnider. First, Mr. Clark, covered in mud, emerged from the field near the crime scene at about 2:00 p.m., approximately ten hours after the shooting. Second, Mr. Clark twice asked the transport officer who drove him to the hospital, "I killed him, didn't I?" Third, Mr. Clark, voluntarily and without provocation, stated in the presence of a security officer at the court house that he did not need a bond reduction hearing because he was guilty of shooting a police officer, and they needed to just put him away and not waste the taxpayers' money on a hearing.

Mr. Clark now suggests that the true offender was Jeffrey Alfred, who owned the shotgun, and whose girlfriend, Trenisshia Washington, claimed ownership of the car found at the crime scene. By the time of the trial, Ms. Washington had married Mr. Alfred. She testified that on the morning of March 30, 2009, Alfred drove her to work in the car, then drove away in it. Alfred testified that he picked up Mr. Clark, and they drove to a house in Abbeville to meet some female friends that Alfred met at work. Both men admitted to using cocaine and other narcotics during the evening. Alfred further testified that when they arrived at the house in Abbeville at about 11:00 or 12:00 that night, only one woman was present. Mr. Clark then borrowed the car to go to the store, and never returned. Alfred testified that the shotgun was his and that he kept it and the shotgun shells in the trunk of Trenisshia's car. This was confirmed by Trenisshia.

4

Elonda Levine testified that Mr. Clark and Alfred came to her residence in Abbeville on a night in March of 2007. She stated that Mr. Clark asked to use the car that Alfred had driven there, and Mr. Clark never returned. Alfred remained at the residence, sitting on the porch, waiting for Mr. Clark to return. Levine testified that she went to bed at approximately 12:30, but she went back to check the porch once or twice in the early morning hours between 1:00 and 4:00 a.m., and Alfred was still sitting on the porch, and, he was still there when she got up later in the morning. Elonda testified that she had been in a relationship with Alfred, but never saw him after that morning. Elonda's mother, Barbara Levine, testified that, one morning in March of 2007, she saw Alfred sitting on her daughter's porch, and she gave him a ride to Lafayette General Hospital. Hence, the State's evidence negated any reasonable possibility that Alfred was the shooter.

Further, the State established the chain of custody of the evidence from the crime scene through testimony at trial. Likewise, the State established through trial testimony the facts regarding Mr. Clark's surrender to police in the cane field approximately ten hours after the shooting. Mr. Clark was soaked and covered in mud due to the pouring rain that had set in during the search for him. Finally, the State established through testimony the unsolicited, voluntary and exculpatory comments made by Mr. Clark himself, admitting to the shooting of the police officer and asking whether he had killed him. Accordingly, in light of the sufficient evidence, the conviction is affirmed.

## *Excessiveness of the Sentence*

In his second assignment of error, Mr. Clark argues that the maximum sentence of fifty years was excessive. This court has explained the analysis for excessive sentence claims:

> In *State v. Semien*, 06-841, pp. 11-12 (La.App. 3 Cir. 1/31/07), 948 So.2d 1189, 1197, *writ denied*, 07-448 (La. 10/12/07), 965 So.2d 397, this court stated:
>
> > The Eighth Amendment to the United States Constitution and La.Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> > To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:
>
> > > [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally,

> it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958 [, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615].

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

*State v. Plauche*, 09-400, pp. 38-39 (La.App. 3 Cir. 1/6/10), 32 So.3d 852, 875-76,

*writ denied*, 10-302 (La. 9/24/10), ___ So.3d ___.

Louisiana Revised Statutes 14:27 provides in pertinent part:

**§ 27.  Attempt; penalties; attempt on peace officer; enhanced penalties**

A.  Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

. . . .

C.  An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

D.  Whoever attempts to commit any crime shall be punished as follows:

(1)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.

(b) *If the offense so attempted is punishable by death or life imprisonment and is attempted against an individual who is a peace officer engaged in the performance of his lawful duty, he shall be imprisoned at hard labor for not less than twenty nor more than fifty years without benefit of parole, probation, or suspension of sentence.*

La.R.S. 14:27 (emphasis added).

At the sentencing hearing, the trial court observed that the pre-sentence investigation report on the defendant listed approximately two and one-half pages of prior offenses. The trial court stated:

> Mr. Clark, what concerns me about this whole situation is it seems as if, in a very short period of time, because you're only twenty-five years old, that you've committed a bunch of violent crimes. And that concerns me a great deal, because, at trial, you know, I may have gotten the impression that you were under the influence of drugs and maybe have done something just out of character with your particular character. But it looks like what you did was exactly what kind of behavior you had been acting, doing. And quite honestly, for someone twenty-five years old, I don't think I've seen a more serious rap sheet with the type of crimes you've been charged with and convicted of in the past. There's a lot of violence, and that concerns me a lot. Also, in this particular case, of course, the victim, here, had you not shot perfectly straight, I'm quite certain that he would have been seriously injured or killed. And under LA R.S. 14:27[sic], attempted murder carries a maximum of fifty (50) years hard labor, and I am going to sentence you to fifty (50) years hard labor without benefit of parole, probation and suspension of sentence.

Thus, the court's reasoning for the maximum sentence is the seriousness of the offense and the lengthy rap sheet showing violence and prior convictions for violent crimes, including second degree battery. At the hearing on the motion to reconsider the sentence, the court further emphasized:

> Okay. Well, I stated the reasons I believe at the time of sentencing for me giving him the maximum sentence, and those are the same reasons that I'm going to deny this motion of reconsidered sentence. First of all, I think it's a very serious offense, and a man's life was, by just luck, saved because of a bulletproof vest. It seems as if Mr. Clark waited in the car in ambush for the police officer and shot the police officer, not to mention that Mr. Clark has some violence in his past. I see quite a serious record of violent offenses as well as some burglaries and so forth. So, because of that, I'm going to deny the motion to reconsider sentence.

8

While the record does not include the pre-sentence investigation (PSI) report, the matters referred to above show that Mr. Clark has a significant criminal record, including prior acts of violence.

In *State v. Thompson*, 39,454 (La.App. 2 Cir. 3/2/05), 894 So.2d 1268, the court upheld a maximum sentence for the defendant, who was involved in a shootout with a police officer. The man was a fourth felony offender, and the second circuit determined that, "given his lengthy criminal past," the defendant "was the worst type of offender." *Id.* at 1285.

In view of the facts discussed at the two relevant hearings, we find that the trial court did not abuse its discretion in imposing the maximum sentence upon the defendant, Kenneth Jay Clark.

IV.

## CONCLUSION

Based upon the foregoing, the conviction for attempted first degree murder and the maximum sentence of fifty years at hard labor are hereby affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

9