STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-226

STATE OF LOUISIANA

VERSUS

COREY JOSEPH CRAIG

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 10-129
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

CONVICTIONS AND SENTENCES FOR ATTEMPTED FIRST DEGREE MURDER AND AGGRAVATED BURGLARY ARE AFFIRMED; CONVICTION AND SENTENCE FOR ATTEMPTED ARMED ROBBERY IS VACATED.

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
    Corey Joseph Craig

**James P. Lemoine**
**Disrict Attorney, Thirty-Fifth Judicial District Court**
**Jimmy D. White**
**Assistant District Attorney**
**P. O. Box 309**
**Colfax, LA 71417**
**(318) 627-2971**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GREMILLION, Judge.**

In January 2009, the victim, Matthew Cannon, walked into his home in Grant Parish after work. While his home computer was warming up, he entered his bathroom and brushed his teeth. After he finished, he walked toward his bedroom and noticed there were objects on his bed that he did not place there. He also saw that his gun cabinet had been emptied. He then looked to his right, into his son's bedroom, and saw a masked man with a gun. The gunman fired from close range, and the victim dropped to the floor, thinking he had been shot.

Cannon then managed to scramble out of the house. The gunman also left the house, apparently by another exit. The victim saw the gunman outside and recognized him as Defendant because he had removed his mask. Defendant was Cannon's neighbor. Defendant ran toward his family home while the victim ran to another neighbor's house. The gunman shot at the victim one more time from his family's driveway, then walked toward his house. The victim reached his other neighbor's back door; they supplied him with a telephone, and he called 911.

The State filed a bill of information charging Defendant, Corey Joseph Craig, with aggravated burglary, a violation of La.R.S. 14:60; armed robbery, a violation of La.R.S. 14:64; attempted armed robbery, a violation of La.R.S. 14:27 and La.R.S. 14:64; attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30; and obstruction of justice, a violation of La.R.S. 14:130.1, all in connection with the above described events.

Defendant moved for the appointment of a sanity commission; the trial court granted the motion and held a hearing. It found that Defendant had the mental capacity to assist his defense. The court arraigned him at that time. He subsequently waived his right to a jury trial.

After trial had begun, the court conducted another hearing on Defendant's competency and found no reasonable ground for appointment of another sanity commission. Defendant took a writ of review, which this court denied. *State v. Craig*, 11-240 (La.App. 3 Cir. 2/28/11) (an unpublished opinion). At the conclusion of the trial, the court found Defendant guilty of aggravated burglary, attempted armed robbery, and attempted first degree murder. He was found not guilty on the two remaining charges.

The court sentenced Defendant to thirty years at hard labor for aggravated burglary; thirty years at hard labor, with the first five years to be served without benefit of parole, probation, or suspension of sentence, for attempted armed robbery; and thirty years at hard labor, with the first ten years to be served without benefits, for attempted first degree murder.

Defendant now appeals, assigning five errors regarding his conviction and sentencing.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues that the evidence adduced at trial was insufficient to uphold his conviction for attempted armed robbery. The analysis for such a claim is settled and has been explained by this court:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*,

436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Armed robbery is defined by La.R.S. 14:64(A): "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Attempt is defined by La.R.S. 14:27(A):

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

In delivering its verdict on the offense at issue, the trial court stated:

> The [S]tate has alleged that Mr. Craig had the specific intent to commit robbery. Mr. Craig's statement to the police was that he intended to lie and wait for Mr. Cannon to come home, secure him, obtain his ATM card and his pin number, steal his truck, go to Mr. Cannon's bank and take money and go from there. At a minimum, that is an attempt to commit Armed Robbery. The evidence also shows that once Mr. Craig entered the home, that he broke into a locked gun cabinet and removed various items. . . . With respect to the crime of Armed Robbery, it is the Court's opinion that Mr. Craig did intend to commit Armed Robber[y]. I think he had - - the state admitted notes that were found that indicated planning. I think the statement that was presented, or description that was presented, was a casing of the place. Mr. Craig was taking notes of Mr. Cannon's goings and comings. Mr. Craig had assembled various items on the couch in the living room, apparently indicating that was where he planned to extract the pin number and information and ATM card from Mr. Cannon. It is clear to the Court that Mr. Craig intended to attempt and [sic] Armed Robbery of Mr. Cannon. The way the events occurred, the Court is not of the opinion that anything was actually taken from the immediate person of Mr. Cannon. Those items were all retrieved prior to Mr. Cannon entering the residence. However, it is clear that the [State] has proven an attempted [sic] to commit Armed Robbery.

Defendant's specific claim is that the evidence did not demonstrate that he took any steps in furtherance of an armed robbery; thus, the conviction rested upon the trial court's use of Defendant's description of his plan to rob the victim. Part of that plan was to bind the victim with duct tape, but the record, including crime scene photographs, does not demonstrate that duct tape was found at the scene. Defendant notes the following long-standing jurisprudence:

> In the trial of every criminal case the State, to warrant a legal conviction of an accused, must prove the corpus delicti, or the fact that a crime has been committed. Without such proof no conviction will be permitted to stand. Underhill, Criminal Evidence, sec. 35, p. 42 (4th ed. 1935), states the rule as follows:

> "Proof of the corpus delicti is essential to a conviction, must be proved beyond a reasonable doubt, and must exclude every hypothesis other than that a crime was committed in order to convict."

> The same authority in discussing the fact that the corpus delicti may be proved by circumstantial evidence says:

> "The corpus delicti, and all the elements thereof, may be proved by circumstantial evidence, from which the jury may reasonably infer that a crime has been committed. Such evidence must exclude every reasonable hypothesis except guilt, and be convincing to a moral certainty; and such proof of corpus delicti must be most convincing and satisfactory proof compatible with the nature of the case." *Id*., sec. 37, p. 45.

> . . . .

> [I]t is the general rule both under statutes and at common law that an extrajudicial confession does not warrant a conviction unless it is corroborated by independent evidence of the corpus delicti". 22 C.J.S. Criminal Law s 839, p. 1472.

*State v. Brown*, 236 La. 562, 571-73, 108 So.2d 233, 236 (La.1959).

As the State points out, the evidence demonstrates acts in furtherance of attempted armed robbery and, thus, the corpus delicti of that crime. Defendant had removed the victim's firearms from a gun cabinet, loaded them, and strategically placed them in various locations in the house before the victim came home.

4

Arguably, there was a completed armed robbery in this case because Defendant took the victim's pistol, and his act of firing at the victim facilitated the taking.[1] However, as seen earlier, the trial court made a specific finding that a completed crime had not been proven.

Defendant fled after his shot missed the victim. However, his actions up to that point constituted acts in furtherance of an armed robbery. Had the bullet found its mark, Defendant could have taken all the firearms he had removed from the cabinet and any other items he wished. For the reasons discussed, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that his convictions for attempted first degree murder, attempted armed robbery, and aggravated burglary violated constitutional protections against double jeopardy.

Defendant cites an earlier decision by this court:

> The Double Jeopardy provisions in the state and federal constitutions protect a defendant from both a second prosecution for the same offense and multiple punishments for the same criminal act. U.S. Const. amend. V; La. Const. art. 1, § 15; *State v. Doughty*, 379 So.2d 1088 (La.1980). When proof of a felony is an essential element of first degree murder, double jeopardy precludes the conviction and punishment of the defendant for both murder and the underlying felony. *State v. Cox*, 07-774 (La.App. 3 Cir. 3/4/09), 4 So.3d 998, *writ denied*, 08-602 (La.9/4/09), 17 So.3d 948. However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be convicted and sentenced for each offense without violating the prohibition against double jeopardy. *State v. Williams*, 05-1338 (La.App. 3 Cir. 3/1/06), 924 So.2d 1159, *writ denied*, 06-1471 (La.12/15/06), 944 So.2d 1284.

---

[1] "Louisiana jurisprudence does not distinguish between the armed robbery which occurs before the killing of the victim and the robbery of the victim whom the defendant has already killed. *State v. Kirkpatrick*, 443 So.2d 546 (La.1983)." *State v. Goodley*, 01-77, p. 10 (La. 6/21/02) 820 So.2d 478, 484.

As explained above, in this case, the State prosecuted and charged the defendant with first degree murder based upon the underlying offense of armed robbery or aggravated burglary. While in brief the defendant contends that the jury based its first degree murder conviction on the underlying offense of armed robbery, the jury's intent in rendering its verdict, specifically which offense it attributed to fulfill the elements of first degree murder, cannot be discerned from the record before us. Nevertheless, the convictions can be upheld if there is sufficient evidence to support either theory. *Cox*, 4 So.3d 998. Here, it is clear that the defendant's protection from double jeopardy was violated when he was convicted and sentenced to first degree murder, armed robbery, and aggravated burglary. However, the trial court imposed the proper remedy by vacating the conviction and sentence for aggravated burglary, the less severely punishable offense. *Doughty*, 379 So.2d 1088; *State ex rel. Adams v. Butler*, 558 So.2d 552 (La.1990); *Cox*, 4 So.3d 998; *State v. Pittman*, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748; *State v. Head*, 598 So.2d 1202 (La.App. 5 Cir.1992).

Additionally, the record supports a determination that under the facts of this case, armed robbery and first degree murder were separate and distinct offenses and thus do not violate double jeopardy.

*State v. Ramsdell*, 09-1510, pp. 10-12 (La.App. 3 Cir. 10/6/10), 47 So.3d 78, 85-86.

In the present case, the State concedes the presence of double jeopardy and recognizes that one of the convictions must be vacated as a consequence. Specifically, both the State and Defendant suggest that the aggravated burglary conviction should be vacated, since it is the least severely punishable offense. We disagree, finding instead that the conviction for attempted armed robbery must be vacated because, unlike the aggravated burglary conviction, it was not a separate and distinct offense.

The trial court based the murder conviction on the commission of both aggravated burglary and attempted armed robbery, but it needed only to be based on one. We choose to vacate the conviction for attempted armed robbery as a violation of the prohibition against double jeopardy because we find that the crime

6

of armed robbery was far more intertwined with the crime of attempted murder, and that the crime of attempted burglary was a separate and distinct crime.

There is an established line of jurisprudence that shows aggravated burglary offenses can be separated from factually-related other offenses. *See State v. Anderson*, 499 So.2d 1252 (La.App. 4 Cir.1986), *writ denied*, 503 So.2d 490 (La.1987), *State v. Davis*, 09-1061 (La.App. 3 Cir. 4/7/10), 36 So.3d 351, *State v. Tyler*, 11-1256, pp. 12-16 (La.App. 3 Cir. 5/2/12), 93 So.3d 670, 678-81, *writ denied*, 12-1260 (La. 2/8/13), 107 So.3d 643.

Just as courts have separated burglaries from subsequent rapes for double jeopardy purposes, burglaries may be similarly separated from subsequent murders and attempted murders. Burglaries may be chronologically or temporally separated from subsequent but otherwise factually related offenses. In other words, by the time the defendant commits the subsequent offense, the burglary is a completed and, thus separate, crime.

Applying the reasoning in *Tyler* to the present case, the aggravated burglary was a completed offense before the victim even entered the house. Thus, it did not fall within the sphere of constitutional double jeopardy protection. The attempted armed robbery, however, was integral to the attempted first degree murder and is the underlying offense which supports the attempted murder conviction. Thus, the conviction for the attempted armed robbery must be vacated because "double jeopardy precludes the conviction and punishment of the defendant for both murder and the underlying felony." *Ramsdell*, 47 So.3d at 85.

7

## ASSIGNMENT OF ERROR NUMBER FOUR

Because it invites discussion of a predicate issue, we address the fourth assignment out of order. In his fourth assignment, Defendant argues that the trial court erred by determining that he was competent to stand trial.

Prior to trial, the court conducted a competency hearing on June 3, 2010, and July 19, 2010; on the latter date, the trial court ruled that Defendant was competent to assist in his defense. However, after trial began on February 15, 2011, newly-appointed defense counsel filed another motion contesting Defendant's capacity, which was heard on February 24, 2011.

At the hearing, only two witnesses testified. The first, Dr. Daniel Lanowski, previously examined Defendant on February 7, 2011, and again on February 14, 2011; and Grant Parish Deputy Brad Suddeth, assigned as warden of the detention facility where Defendant is being housed, testified regarding his observations and interactions with Defendant while in his custody. After hearing from both witnesses, the trial court ruled that there were no grounds for appointment of a new sanity commission and again ruled that Defendant was capable of assisting at trial.

Trial was continued until March 14, 2011, to permit Defendant to file a writ in this court. This court issued a stay order, but ultimately determined that there was no error in the trial court's ruling. *State v. Craig*, 11-240 (La.App. 3 Cir. 5/3/11) (unpublished opinion). Thus, Defendant's assignment essentially re-visits the 2011 ruling.

This court has stated:

> Although a defendant may seek review of a pretrial ruling even after a pretrial supervisory writ application is denied, when the defendant does not present any additional evidence on this issue after the pretrial ruling, the issue can be rejected. *State v. Hebert*, 97-1742 (La.App. 3 Cir. 6/3/98), 716 So.2d 63, *writ denied*, 98-1813 (La.11/13/98), 730

So.2d 455, *cert. denied*, 529 U.S. 1072, 120 S.Ct. 1685, 146 L.Ed.2d 492 (2000) (quoting *State v. Magee*, 93-643, p. 2 (La.App. 3 Cir. 10/5/94), 643 So.2d 497, 499). . . . , "[j]udicial efficiency demands that this court accord great deference to its pre-trial decision unless it is apparent that the determination was patently erroneous and produced unjust results." *Hebert*, 716 So.2d at 68. Our review of the record reveals no additional evidence for the defendant's allegations of prosecutorial misconduct which would support his pretrial motions.

*State v. Perry*, 12-298, p. 7 (La.App. 3 Cir. 11/7/12), 101 So.3d 575, 580, *writ denied*, 12-2657 (La. 5/24/13), 116 So.3d 659.

Defendant now notes that the colloquy of his waiver of jury trial indicates that he had difficulty deciding whether to make the waiver. Also, the trial court took note of his "significant mental issues" during sentencing. However, these points do not constitute new evidence of the kind contemplated by *Perry*. Defendant made his waiver months before this court's writ ruling, and sentencing factors do not provide a reason to revisit the conduct of the trial. During sentencing, the court reiterated its conclusions that Defendant knew right from wrong and was competent to stand trial. For the reasons discussed, this assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER THREE**

In his third assignment of error, Defendant questions whether he made a valid waiver of the right to a trial by jury, especially in light of indications in the record that he may have substandard learning ability. Assertions regarding his possible mental difficulties were mentioned in the previous discussion of the fourth assignment of error.

Defendant quotes the waiver colloquy at length; we note the pertinent exchange:

9

BY THE COURT:    Okay. And, sir, do you understand that you have the right to be tried by a jury on those charges?

BY MR. CRAIG:    A jury?

BY MR. HIGGINS:    A jury, twelve people, they sit up here and they can judge you or we can have the Judge judge you.

BY MR. CRAIG:    It don't matter to me.

BY MR. HIGGINS:    Okay.

BY THE COURT:    Sir?

BY MR. CRAIG:    It don't bother me.

BY MR. HIGGINS:    It doesn't matter to him.

BY THE COURT:    It doesn't bother you, okay. Sir, do you wish to be tried by a Judge or a jury?

BY MR. HIGGINS:    Judge.

BY MR. CRAIG:    I don't know.

BY MR. HIGGINS:    The Judge is what I advise.

BY MR. CRAIG:    Judge, yeah.

BY THE COURT:    Okay. Are you going to accept Mr. Higgins' recommendation of a judge trial?

BY MR. CRAIG:    What did you say?

BY THE COURT:    Are you going to follow Mr. Higgins' advice and have a judge trial or do you wish to be tried by a jury?

BY MR. CRAIG:    I don't know what I want to be tried by.

BY THE COURT:    Okay. Well, sir, you need to decide today.

BY MR. CRAIG:    Well, by you then.

BY THE COURT:    Okay.

BY MR. HIGGINS:    Very good.

10

BY MR. WHITE:    Judge, the only thing I would request is a boykinization on the jury situation involving his education and ability to understand what a jury is.  I haven't talked to him. I don't know that he . . .

BY THE COURT:    Mr. Craig, what was your highest level of school?

BY MR. CRAIG:    I don't know.  I'm not that good in school.

BY THE COURT:    [O]kay.  Do you know the last grade that you passed?

BY MR. CRAIG:    Seventh.

BY THE COURT:    Seventh?

BY MR. CRAIG:    But I ain't did nothing in there.

BY THE COURT:    Sir?

BY MR. CRAIG:    I ain't did nothing in there though.

BY THE COURT:    Mr. Craig, do you know what a jury is?

BY MR. CRAIG:    (NO VERBAL RESPONSE HEARD)

BY THE COURT:    Sir, do you understand that a jury would be people from this parish who are over the age of 18, who would sit . . .

BY MR. HIGGINS:    He's nodding his, so he. . .

BY THE COURT:    I need you to answer.  Do you understand that they would be sitting in those chairs right there and they would hear everything that is presented in this case and they would make a decision as to whether or not you were innocent or guilty, instead of me making that decision. Do you understand that, sir?

BY MR. CRAIG:    (NO VERBAL RESPONSE HEARD)

BY THE COURT:    I need you to verbalize your  answer, sir.

BY MR. CRAIG:    Uh-huh. (INDICATES "YES")

11

| | |
|---|---|
| BY THE COURT: | I need you to say your answer. |
| BY MR. CRAIG: | Yeah, I understand. |
| BY THE COURT: | Okay. So, do you understand that you could have people from anywhere in Grant Parish that would come up here, they would get picked. Mr. Higgins would have an opportunity to try to pick the ones he wants, Mr. White would try to pick the ones that he wants, get them up in that panel and they would be the ones that would decide your innocence or guilt. Now, would you prefer me to do that or them to do that? |
| BY MR. CRAIG: | I guess they can do it, the jury thing. |
| BY MR. HIGGINS: | A what? A judge thing? |
| BY MR. CRAIG: | I don't know. |
| BY MR. HIGGINS: | What I'm advising you to do, as your attorney, is I believe because of the facts of your case and the nature of your case and what I intend to put on as evidence, that includes psychiatric . . . includes doctors. I think that Judge Willett is in a better position to understand what the psychiatrists say, than a jury does. Does that make sense? |
| BY MR. CRAIG: | Yes, sir. |
| BY MR. HIGGINS: | Okay. But, that's what I'd like to do. |
| BY THE COURT: | Mr. White, do you have any questions you wish to ask Mr. Craig? |
| BY MR. WHITE: | No, Your Honor. I believe that's sufficient. |
| BY THE COURT: | And, Mr. Craig, do you wish to be tried by me or a jury? |
| BY MR. CRAIG: | By you. |

In a first circuit case involving an argument similar to the one now advanced, the court stated:

A defendant may waive his right to a jury trial and elect to be tried by the judge. LSA-C.Cr.P. art. 780(A). Generally, the waiver is to be entered at arraignment. However, the trial judge may accept a waiver of a jury trial at any time prior to the commencement of trial. LSA-C.Cr.P. art. 780(B). A waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. *See State v. Kahey*, 436 So.2d 475, 486 (La.1983). A waiver of this right is never presumed. *State v. Brooks*, 2001-1138, p. 5 (La.App. 1st Cir.3/28/02), 814 So.2d 72, 76, *writ denied*, 2002-1215 (La.11/22/02), 829 So.2d 1037. However, no special form is required for a defendant to waive his right to a jury trial. *State v. Gamble*, 504 So.2d 1100, 1102 (La.App. 5th Cir.1987).

The record in this case reflects that on April 20, 2009, the day before his trial, the court noted on the record that defense counsel mentioned the possibility of the defendant waiving his right to a jury trial. The defendant responded affirmatively when the court asked if he had participated in discussions regarding a jury waiver with his attorney. The defendant stated that he wanted to waive his jury-trial right. Before accepting the waiver, the trial judge conducted a colloquy to establish the defendant's competency to waive his right to a jury trial. The judge explained that the defendant was charged with two felonies and thus, he had the right to elect to have a jury hear his case or to have the case decided by the judge. The defendant indicated that he understood this right. Next, the court asked, "Now do you know what a jury is? Do you understand what a jury is?" To this, the defendant replied, "No." The judge explained:

> If you have a jury trial, you would have twelve people, twelve citizens who would hear the evidence from the witness stand and they would make the decision whether or not you are guilty or you are innocent of the charge of armed robbery and whether or not you are guilty or innocent of the charge of aggravated battery. They would make the decision about your guilt. I would sentence you. Okay.
>
> . . . .
>
> So you understand what a jury does? It's twelve people who are selected, twelve citizens, and they listen to the evidence and they decide whether or not you're guilty or innocent.
>
> If you have a trial with a Judge, I'm the Judge, I'm the person that listens to the evidence, and I decide whether or not you're guilty or innocent.

> Do you understand the difference between the two?

> The defendant indicated that he understood the court's explanation. After reviewing the bill of information and conferring with his attorney, the defendant advised the court that he wished to waive his right to a jury and proceed with a bench trial.

> Upon reviewing the entirety of the jury trial waiver proceedings in this case, we find that the defendant knowingly and intelligently waived his right to be tried by a jury and elected to be tried by the trial judge. Once the defendant indicated that he did not fully understand the role of a jury, the court thoroughly explained the difference between a bench trial and a jury trial in basic terminology. . . . . Thus, considering the colloquy between the trial judge and the defendant, as well as the defendant's demonstrated awareness of the proceedings, we find that he knowingly and intelligently waived his right to a jury trial.

*State v. Coleman*, 09-1388, pp. 3-6 (La.App. 1 Cir. 2/12/10), 35 So.3d 1096, 1098-99, *writ denied*, 10-894 (La. 4/29/11), 62 So.3d 103. As noted in the discussion of the fourth assignment of error, the trial court found Defendant competent to assist in his defense.

The colloquy regarding his waiver of the right to trial by jury is similar to the one analyzed in *Coleman.* This court is favorably impressed by Defendant's on-the-record discussion with his counsel regarding the specific rationale for choosing to waive the jury. Thus, we find that Defendant knowingly and intelligently waived his right to a jury trial.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his final assignment of error, Defendant argues, as he did below, that his sentences are excessive. Because we have vacated the armed robbery conviction and sentence, only the sentences for attempted first degree murder and aggravated burglary are at issue. Defendant was sentenced to thirty years at hard labor for attempted first degree murder, with the first ten years to be served without benefit

of parole, probation, or suspension of sentence. For aggravated burglary, Defendant was sentenced to thirty years at hard labor, to run concurrently.

Defendant acknowledges that the sentencing range for attempted first degree murder is ten to fifty years. La.R.S. 14:27(D)(1)(a), La.R.S. 14:30. Thus, he received a mid-range sentence for this offense. The potential term for aggravated burglary is one to thirty years. Therefore, he received the maximum sentence available for that crime. La.R.S. 14:60. Among other arguments, Defendant claims that he is not the "worst kind of offender"; thus, the maximum sentence was inappropriate. Preliminarily, the fact that the trial court meted out three concurrent thirty-year sentences in this case suggests its assessment that thirty years was an appropriate benchmark of punishment for Defendant's actions, rather than a conclusion that he was the worst kind of offender regarding aggravated burglary. The court was also explicitly concerned about the safety of the public.

This court has previously explained the analysis for an excessive-sentence claim:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in [*State v.*] *Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98)] 726 So.2d [57] at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

    1. The nature of the crime,

    2. The nature and background of the offender, and

    3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59.

Regarding the nature of the crime and the nature and background of the offender, we note the trial court's reasoning:

BY THE COURT: The Court has studied the pre-sentence investigation. I've also reviewed the medical reports prepared by Doctors Binns, Piland, and Lanowski. The Court also received a letter from Mr. Craig's mother, which I have reviewed. The Court does note that Mr. Craig does have significant mental issues which have seriously affected his intellectual development. The Court also notes that the medical records indicate that his mother and family have diligently tried to attend to his mental illnesses from an early age. That is somewhat unusual. Often times we have people that get into trouble, they want to blame the fact that they did what they did on the mental illness and they want the [S]tate to then try to help them. Mr. Craig's family has tried to help him. The Court also notes that Mr. Craig is a very young man. The Court does consider his age and his mental ability as mitigating factors. However, the Court also notes that he has been treated by numerous facilities and physicians and has received significant counseling, throughout his young age, that has not seemed to prevent these type of incidences [sic]. The Court has considered these matters as well as the nature of the present offenses, in light of the provisions of the Code of Criminal Article 894.1. The Court makes the following findings regarding sentence: Mr. Craig is a 19-year-old male who has a history of mental illness, including, ADHD, Conduct Disorder, Impulse Control, Intermittent Explosive Disorder, Psychosis, Hallucinations, Bipolar and, according to Dr. Lanowski, shows elements of a pervasive developmental disorder characterized by severe impairments of social interactions and unrealistic interests. This Court and the Appellate Courts have previously examined the issues of Mr. Craig's competency to stand trial and his ability to distinguish between right and wrong. Therefore, I do not intend to revisit those issues. As I indicated, I do consider Mr. Craig's age and mental deficiencies as significant mitigating factors. However, Mr. Craig has a history of planning and

attempting to carry out serious criminal activity. The pre-sentence investigation references a proceeding where Mr. Craig stole his grandfather's truck and a gun in an effort to drive to Alabama to kill someone who had offended him online. Fortunately, Mr. Craig was apprehended in Alabama when his truck broke down. Twelve days after his release from the state's custody, Mr. Craig attempted to carry out a plan to break into Mr. Cannon's home, rob him at gun point, and use the stolen money to flee the country. Mr. Cannon arrived home early which disrupted Mr. Craig's plan, which resulted in Mr. Craig firing a shot at Mr. Cannon at point blank range and fleeing into the woods. Through his counsel and correspondence to this Court, Mr. Craig and his family have appealed to the Court that Mr. Craig needs psychiatric treatment, not imprisonment. As I indicated, Mr. Craig's family has tried to get him psychiatric treatment. In light of that treatment, Mr. Craig is still a danger to himself and those around him. While I am sympathetic to Mr. Craig's family, I am equally sympathetic to Mr. Cannon for the ordeal that he endured. Mr. Cannon was the victim in this case, not Mr. Craig. I am not a mental health expert. That's why we have experts to come and give us their opinions. It is my ley [sic] opinion, based on the testimony that we have received, that as a result of Mr. Craig's mental illnesses that he does not comprehend fully the consequences of his actions. I would equate it to a 6-year-old with a pellet gun. A 6-year-old doesn't understand that a pellet gun can put someone's eye out. The problem with Mr. Craig is he's smart enough to carry things out. He's smart enough to plan elaborate criminal activity that is extremely dangerous to other people. I do hope that Mr. Craig receives mental health treatment in the future, but, society has a right to be protected from dangerous individuals such as Mr. Craig.

Clearly, the first two factors of the *Whatley/Lisotta* analysis weigh against Defendant, in light of the facts recited by the trial court.

Regarding the sentences imposed for similar crimes, Defendant cites jurisprudence that is more relevant to attempted second degree murder than to the current crimes. In *State v. Sibley*, 09-1104 (La.App. 3 Cir. 6/2/10), 41 So.3d 581, a majority of this court upheld concurrent thirty-year sentences for attempted first degree murder and armed robbery for a defendant diagnosed with mental illness. During the crimes, he held a gun to one victim's head and shot another in the leg. *Id*. at 586-87.

In the case noted below, the defendant's use of violence contributed to this court's affirmance of his maximum sentence for aggravated burglary:

[T]he trial court did not abuse its considerable discretion when it sentenced Defendant to thirty years at hard labor considering the circumstance of the case and Defendant's criminal history. As noted by the trial court, Defendant is a five-time felony offender and has an extensive arrest record. In *State v. Thompson*, 39,454, 39,455 (La.App. 2 Cir. 3/2/05), 894 So.2d 1268, cited by the trial court in the present case as a comparison, Thompson was convicted of aggravated burglary and received the maximum sentence of thirty years. The second circuit affirmed the sentence, noting that Thompson was a four-time felony offender and had a lengthy criminal past. The second circuit further stated, "Defendant was the worst type of offender. The crimes were committed in a manner that endangered the lives of several people and with total disregard for public safety . . . it was clear that [Thompson] had not benefited from his previous incarcerations and that, this time, he would be sent away to serve the interest of public safety." *Id*. at 1285.

Under the circumstances of the case as set forth by the trial court above and considering Defendant's extensive criminal history, Defendant's maximum sentence was not such that would shock this court's sense of justice. Accordingly, there is no merit to this claim.

*State v. Brandenburg*, 06-1158 pp. 30-31 (La.App. 3 Cir. 2/7/07) 949 So.2d 625, 646, *writ denied*, 07-538 (La. 10/26/07), 966 So.2d 571, *and writ denied*, 07-614 (La. 10/26/07), 966 So.2d 573.

In *State v. Thompson*, 39,454, 39,455 (La.App. 2 Cir. 3/2/05), 894 So.2d 1268, the defendant received fifty years for attempted first degree murder and thirty years for aggravated burglary. The court affirmed the sentences, explaining:

After conviction, the trial court ordered a presentence investigation report of Defendant which revealed an extensive criminal history and that he was a fourth-felony offender. The trial court sentenced Defendant to the maximum sentence of 50 years at hard labor on the attempted first-degree murder conviction and the maximum sentence of 30 years on the aggravated burglary conviction.

In sentencing Defendant to the maximum sentences allowed, the trial court found that these were the most serious violations of the offenses; and, given his lengthy criminal past, Defendant was the worst type of offender. . . . . Given the language of *Grissom, supra*,

and *Guzman, supra,* and Defendant's history, we find that the trial court did not abuse its wide discretion in imposing the maximum sentences; and that the sentences do not shock the sense of justice. Accordingly, we reject this assignment of error.

*Thompson,* 894 So.2d at 1285. The fourth circuit sustained maximum sentences for two aggravated burglaries that were connected with two rapes. *State v. Scott*, 593 So.2d 704, 711 (La.App. 4 Cir. 1991).[2]

Although none of the jurisprudence cited is exactly on all fours with the present case, a common thread repeated is that maximum sentences may be upheld for aggravated burglaries that are associated with other violent offenses. Also, the cases show the sentences at issue does not fall "outside the norms of Louisiana jurisprudence[.]" *State v. Office*, 07-193, p. 12 (La.App. 3 Cir. 10/3/07), 967 So.2d 1185, 1194, *writ denied*, 07-2274 (La. 4/18/08), 978 So.2d 348.

In the present case, Defendant shot at the victim from close range; only the latter's good fortune (or the former's poor aim) prevented this from being a murder case. Also, Defendant had recently made threats of violence toward another person in a separate incident and took actions to make good on that threat. Thus, Defendant's sentences for attempted first degree murder and aggravated burglary are affirmed. A standard *Whatley/Lisotta* analysis supports this conclusion, and Defendant's attempt to kill the victim, coupled with his apparent propensity for violence, ranks him among the worst kind of offenders for the crime of aggravated burglary. For the reasons discussed, this assignment lacks merit.

---

[2] Although the *Scott* court's dispositional language indicates that all the sentences were to be set aside, its discussion clearly indicates that the aggravated burglary sentences were not excessive.

**DECREE**

Defendant's convictions and sentences for attempted first degree murder and aggravated burglary are affirmed. The conviction and sentence for attempted armed robbery are vacated, as the conviction violates the constitutional prohibition against double jeopardy.

**CONVICTIONS AND SENTENCES FOR ATTEMPTED FIRST DEGREE MURDER AND AGGRAVATED BATTERY ARE AFFIRMED; CONVICTION AND SENTENCE FOR ATTEMPTED ARMED ROBBERY IS VACATED.**